DOCKETED

FEB 2 0 2002

FILED-ED4

'02 FEB 19 PM 1: 30

CLERK
U.S. DISTRICT COURT

02C 1160

JUDGE SHADUR

MAGISTRATE JUDGE NOLAN

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOHANNA SANTIAGO,

                Plaintiff,

        v.

LEO PULIDO, individually and not in his
capacity as a City of Chicago Employee,
NANCY FLORES, individually and not in her
capacity as a City of Chicago Employee,
RICHARD DOWLING, individually and not
in his capacity as a City of Chicago Employee,
CITY OF CHICAGO PARK DISTRICT,

                Defendants.

**COMPLAINT FOR SEXUAL HARASSMENT AND SEX DISCRIMINATION
IN VIOLATION OF 42 U.S.C. § 1983,
RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e, *et seq.*,
(TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED)
ASSAULT, INVASION OF PRIVACY, AND
RECKLESS AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS[1]**

    Plaintiff, JOHANNA SANTIAGO, for her complaint against LEO PULIDO, NANCY

FLORES, RICHARD DOWLING, and CITY OF CHICAGO PARK DISTRICT, alleges and states

as follows:

---

[1] Plaintiff had filed three charges with the EEOC, one for sexual harassment and two more for retaliation. The EEOC made a determination in Plaintiff's favor on the sexual harassment charge and was unable to conciliate with Defendant. EEOC is now maintaining the file in its Washington Office and is contemplating filing suit in its own name. As a result, Plaintiff has been provided a Notice of Right to Sue on her retaliation charges, but not on her sexual harassment charge and this complaint does not yet include the Title VII count for sexual harassment. In addition, Plaintiff intends to amend the complaint to include numerous legal theories not contained herein.

## Introduction

1.      This complaint begins with the hostile environment created by Defendant Leo Pulido for the Plaintiff, Johanna Santiago, which grew to include *quid pro quo* sexual harassment, arising from numerous comments by Defendant Pulido including but not limited to: "She likes it when guys does it in her ass like that."; "You are a fuckin' whore"; "...why don't you work on me."; "Do you like it in the ass? Because I can help you with that"; "Do you want your check now? If so come and get it" (accompanied by dropping his pants); and if "You know Johanna, if you fuck me you might become a monthly attendant here." In addition, Defendant Pulido made several requests for such things as blow-jobs and "fast ones". Defendant Pulido also touched Plaintiff's buttocks and grabbed her breasts at one point asking if her boobs had grown.

2.      As a result of this kind of harassment, Plaintiff complained to Defendant Pulido, his superior, Human Resources, and even Legal Investigations (of the Park District). No action was taken to curtail this harassment, and in April of 2001, Plaintiff filed a complaint of sexual harassment and retaliation with the United States Equal Employment Opportunity Commission (hereinafter "EEOC").

3.      Thereafter, Defendant Nancy Flores began a campaign of retaliatory harassment against the Plaintiff including having several vehicles follow her on city streets and highways, camp-out outside her home, interfere with her work duties.

4.      In August of 2001 Plaintiff filed a second charge with the EEOC alleging retaliation. Following the second charge, Defendant Richard Dowling, began following her, sitting outside her home, watching her movements at all hours of the night, and using a zoom lense to view the inside of her home.

**Parties**

5.     Plaintiff, JOHANNA SANTIAGO, (hereinafter "Plaintiff" or "Johanna"), is a female individual residing in the City of Chicago, State of Illinois, and within the Territorial Jurisdiction of the United States District Court for the Northern District of Illinois.

6.     Defendant CITY OF CHICAGO PARK DISTRICT (hereinafter "Park District") is on information and belief, a department of the City of Chicago which is a body corporate and politic organized under the laws of the State of Illinois.

7.     Defendant LEO PULIDO, (hereinafter "Defendant Pulido"), is a male individual who, on information and belief resides within the territorial jurisdiction of the United States District Court for the Northern District of Illinois. At all times relevant hereto, Defendant Pulido was an employee of Defendant Park District. Defendant Pulido is sued in his individual capacity.

8.     Defendant NANCY FLORES, (hereinafter "Defendant Flores"), is an individual who, on information and belief resides within the territorial jurisdiction of the United States District Court for the Northern District of Illinois. At all times relevant hereto, Defendant Flores was an employee of Defendant Park District. Defendant Flores is sued in her individual capacity.

9.     On information and belief, Defendant RICHARD DOWLING (hereinafter "Defendant Dowling") is a male individual who, on information and belief resides within the territorial jurisdiction of the United States District Court for the Northern District of Illinois. On information and belief, at all times relevant hereto, Defendant Dowling was an employee or agent of Defendant Park District. Defendant Dowling is sued in his individual capacity.

3

**Jurisdiction**

10.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. S § 1343 (a)(3) and (4), because this complaint is filed for violations of Federal Law, 42 U.S.C. § 2000e (Title VII of the Civil Rights Act of 1964 as amended) and 42 U.S.C. § 1983.  This Court has supplemental jurisdiction over the state law claims pled in this Complaint.

11.     On April 25, 2001, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging sexual harassment, Charge Number 210A12907.

12.     On October 25, 2001, the EEOC made a determination of a cause finding in Plaintiff's favor and began conciliation efforts.  When, on November 19, 2001, those efforts failed, EEOC forwarded the file to its Washington Office where it is currently awaiting a determination on whether EEOC will be filing a suit against Defendant.

13.     On August 31, 2001, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging retaliation, Charge Number 210A14979.

14.     On October 29, 2001, Plaintiff filed yet another charge of discrimination with the Equal Employment Opportunity Commission (EEOC), again alleging retaliation, Charge Number 210A20399.

15.     On November 19, 2001, the EEOC sent Notices of Right to Sue on both retaliation charges which were received by Plaintiff's counsel a few days thereafter.

16.     Assuming a November 19, 2001 date for the Notices of Right to Sue, the 90 day statute of limitations would run on February 17, 2002.  However, because February 17, 2002 is a Sunday, and the Courts are closed on Monday February 18, 2002 for a holiday, Plaintiff timely files

4

this complaint on Tuesday, February 19, 2002.

## Venue

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) because, on information and belief, all parties reside in this district and all events relevant to this complaint took place in this district.

## Events

18.     Johanna began working as an attendant for the Defendant Park District in or about May of 1999.

19.     Plaintiff reported to Defendant Pulido who reported to the Area Supervisor.

The Pregnancy

20.     Sometime in early 2000, Johanna became pregnant; she was told by her doctor of her condition on or about April 22, 2000.

21.     On April 25, 2000, Johanna provided Defendant Pulido with a note from her doctor explaining that she was pregnant and that she had certain limitations.

22.     Defendant Pulido told Johanna that her doctor's note was no good and ordered her to do work in violation of her doctor's orders.

Sexual Harassment

23.     On April 25, 2000, the same day he was informed of Johanna's pregnancy, Defendant Pulido began a campaign of sexual harassment designed to intimidate Plaintiff, and ultimately to

5

obtain her acquiescence to his sexual advances. This campaign included, but was not limited to the following:

    a.    On April 25, 200, an individual known as Monk commented that Plaintiff's knees were dirty, Carlos Martinez is probably hitting you in the ass. Defendant Pulido who was standing there began to laugh and stated " You know, Monk, she likes it when guys does it in her ass like that.

    b.    On or about May 2, 2000, Pulido was standing around watching Johanna working outside the field house when a youth (possibly 13) called her a whore; Pulido did nothing. When Johanna asked Pulido why he did not intervene on her behalf he stated "Well you are a fuckin' whore."

    c.    On or about May 3, 2000, Pulido told Johanna to clean up the art room and to call him when she got there. Thinking that he wanted some tables moved and was going to have to help her, she did call him down to the art room. Pulido entered the room and said "I can help you with this, but you know, you gotta help me out too." (Meaning sexually.)

    d.    On or about May 4, 2000, Pulido approached Johanna and asked her if she wanted to go to the auditorium and give him "a fast one".

    e.    On May 9, 23, and 31 2000 Pulido made requests of Johanna for a "blow-job".

    f.    On or about May 16, 2000, Pulido told Johanna that if she wanted to leave work unfinished, "...why don't you work on me."

    g.    On or about May 17, 2000 at a full staff meeting Pulido announced his upcoming vacation and turned to Johanna and said "If you mess-up while I am gone, when

I come back I am going to get on your ass, literally on your ass."

h.      On or about June 21, 2000, Defendant Pulido said to her "Do like it in the ass? Because I can help you with that." That same day he also said to Plaintiff "How about three-some? Do you and your husband like that too?" Later that day, in front of Johanna's husband who had come to get her car, Defendant Pulido began stroking Johanna's shoulders, and touching and squeezing her buttocks. Johanna tried to physically remove Defendant Pulido's hands from her body.

i.      Upon hearing Plaintiff's unequivocal complaint to the comments and rejection of any intended sexual advance, Defendant Pulido shouted "What's your fuckin' problem?"

j.      On or about June 30, 2000 -- a pay day -- Defendant Pulido said to Plaintiff, "Do you want you check now? And if so come and get it." Defendant Pulido then placed Johanna's pay check down his shorts.

k.      Later that day, Defendant Pulido again approached Plaintiff and said "Do you want to come and get it?" and then began making hand gestures imitating stroking his penis for sexual gratification.

l.      On or about July 18, 2000, Defendant Pulido told Plaintiff "I cant perform you real good if you want." Again, Plaintiff unequivocally conveyed her distress with the comment stating "Leo, you're a married man and I don't like to be talked to that way."

m.      In early August, again in front of Johanna's husband, Defendant Pulido grabbed Johanna's breast and asked "Are your boobs growing?".

n.      On or about August 22, 2000, Defendant Pulido Pulido approached Plaintiff and stated "I like to eat out women, if you like some too" and began dramatically licking his

7

mouth and lips.

        o.     On or about September 6, 2000 Defendant Pulido approached Plaintiff and stated "You know Johanna, if you fuck me you might become a monthly attendant here."

24.     The list of comments and actions described in paragraph ** above is not exhaustive, but rather representative of comments that were made by Defendant Pulido on a daily basis, often more than once per day for a period of time running from approximately April 25, 2000 through February 13, 2001 a few days before Johanna transferred to another park.

25.     Accompanied with most of these acts by Pulido was his warning to Johanna that "If you tell on me you'll be fired, so keep quiet or you'll be fired.

26.     Because of what he had seen and heard, by June of 2000, Johanna's husband had begun to suspect, wrongly, that Johanna was having an affair with Defendant Pulido.

27.     Between June and October of 2000, Johanna and her husband had numerous arguments over Defendant Pulido, the harassment, and the suspected affair.

28.     Finally, by October of 2000, the pressure on their relationship became unbearable and Johanna's husband left her.

29.     On or about May 20, 2000, Defendant Flores came to the park with her husband and children and introduced herself as the new Area Supervisor. (On information and belief, the prior Area Supervisor had been under investigation for some manner of illegal activity and was terminated.)

30.     On June 1, 2000, Johanna went to Defendant Flores' office at Gage Park and over a 20 minute period complained of all the harassment she had been suffering at the hands of Defendant Pulido over the prior month plus.

31. Defendant Flores' response to Johanna was to laugh and say that "Leo isn't that kind of guy."

32. Johanna then went to the Park District's Human Resources Department at Tarkington Park and complained to Mr. John Mietlicki, a human resources manager. No action was taken.

33. On or about July 12, 2000 Johanna again approached Defendant Flores with similar complaints and was told by Flores that if she had a problem with Pulido she would have to take it up with Pulido.

34. Again Johanna went to the Human Resources Department where she spoke to Mr. Mietlicki's secretary, Karen. Karen said that she would forward the information to Mr. Mietlicki and that he would call Plaintiff. Johanna never received a call from Mr. Mietlicki.

35. On or about September 20, 2000, Johanna contacted Janet McKenna, a member of the Park District's Legal Investigations Department.

36. Ms. McKenna said the she wanted the originals of all of Johanna's evidence which included audio tapes and notes.

37. Although Johanna was prepared to provide those documents to Ms. McKenna, when Ms. McKenna stated that Johanna would never get them back, Johanna became suspicious and refused to turn them over.

38. Ms. McKenna then asked for a meeting with Johanna, Defendant Flores, and Mr. Mietlicki at the Human Resources Office to which Johanna agreed. The meeting was set for September 22, 2000.

39. On September 22, 2000, Johanna came to Mr. Mietlicki's office for the meeting, but there was no meeting. Instead, McKenna made copies of Johanna's notes and provided them to

9

Flores and Mietlicki and then left.

40.     In spite of Johanna's constant complaints and rejections made to Defendant Pulido, and her complaints to Nancy Flores, John Mietlicki, and Janet McKenna, as well as her having filed a complaint with the EEOC in April of 2001, Defendant Pulido's conduct continued and Defendant Park District failed to address the conduct.

Retaliatory Activities

41.     On or about February 21, 2001, Johanna was transferred to Cornell Park.

42.     On her first day a Cornell Park, Johanna was informed by her new supervisor, Dominic Martin that he was ordered by Defendant Flores to fire Johanna.

43.     On April 25, 2001, Johanna finally filed her Charge of Discrimination alleging sexual harassment and retaliation with the EEOC.

44.     Thereafter, Johanna suffered a campaign of harassment at the direction of Defendant Flores, in retaliation for filing the EEOC Charge.

45.     This campaign of harassment included:

        a.      On or about May 23, 2001, Roy Moya, apparently on orders coming down from Defendant Flores, prohibited Plaintiff from using the office telephone (except in emergencies and then only for five minutes), speaking to park patrons or even park staff.

        b.      On or about May 24, 2001, Johanna was falsely accused of doing drugs;

        c.      On or about June 25, 2001, Johanna was falsely accused of theft;

        d.      From May 10, 2001 through September 21, 2001, Johanna was continually underpaid and monies are still owed to her for work performed;

e.      From May 1, 2001 through July of 2001, Plaintiff was denied assistance in her job and was given all of the "dirty work", which had not been the case before that.

f.      Starting on or about June 16, 2001, and continuing until the date of her constructive discharge, anyone calling for Johanna was told that she was not at work. This included an emergency situation in which her mother called to inform her that her father had been in a serious automobile accident which left him temporarily paralyzed.

Stalking (Further Retaliation)

46.     Beginning in about the first week of May, 2001, Plaintiff began to notice three vehicles constantly following her on her off hours and parked near her home: a black SUV known to belong to Defendant Flores, a copper Dodge, and a blue Chevrolet van.

47.     The drivers of these vehicles made no attempt at subtlety, but rather followed closely behind on the highway and city streets changing lanes to remain directly behind her the moment Johanna changed lanes.

48.     These vehicles were also constantly seen parked outside Johanna's home.

49.     In early August Johanna was called into Defendant Flores' office and for the first and only time personally met Defendant Dowling. On information and belief, Defendant Dowling was the driver of one or more of the vehicles described above.

50.     Johanna was told to bring with her to that meeting large amounts of personal information including: utility bills, tax returns, rent receipts, returned checks, hospital bills, all Internal Revenue documents, credit card statements, automobile insurance, her daughter's birth certificate, vehicle registration, driver's license, and state identification card.

11

51.     Johanna brought her father along for this meeting. At first he was not permitted to be present, but was consulted by Mr. Dowling for about five minutes and then dismissed.

52.     During this "meeting", Defendant Dowling proceeded to harangue and yell at Johanna.

53.     Defendant Dowling made numerous intimidating comments including:

      a.     that he had 17 hours of videotape of her;

      b.     that he had, at all hours of the day and night, been sitting outside her home and observing it;

      c.     that he had been following her; and

      d.     had been using a zoom lense to view the inside of her home through the windows.

54.     Defendant Dowling then threw Johanna's father out of the room and ordered her to fill out a six or seven page form requesting all kinds of personal information about her  home (including the number and kinds of rooms), information about her vehicle (including make, model, and license plate), and her family members (including names and ages).

55.     At first Johanna refused to fill out the form, but on the threat of losing her job and criminal sanctions, she complied.

56.     On information and belief, Defendant Chicago Park District has no residency requirement and therefore these inquiries could not have been related to confirming Johanna's compliance with such a requirement.

57.     The vehicles following her continued for several months.

58.     Johanna began to fear for her safety, and was constantly nervous that at any time,

someone might break down the door to her home, enter and attack her or members of her family, or that one of the vehicles might cause an accident on the road and that she would be assaulted.

59.     Because Defendant Flores had told her that the vehicles should have stopped following her, because she recognized one of the vehicles as belonging to Defendant Flores, and because of Dowling's comments, Johanna was certain that the stalking was being done by the Park District and/or its employees.

60.     In addition, because Johanna had already been warned by Martin that he was to fire her, she knew that the purpose of the stalking was to force her to resign.

61.     Finally, by the end of October, 2001, the stress and fear Johanna was feeling became too much, and in spite of her need for her job, she had no choice but to resign hoping that the stalking would end.

62.     The vehicles stopped following Johanna and appearing outside her home about four days after she had tendered her resignation.


Injuries

63.     As a result of the actions heretofore described, Plaintiff suffered:

a.      Severe Emotional Distress;

b.      Physical symptoms resulting from that distress;

c.      Deterioration of her heath;

d.      Depression

e.      Loss of income;

f.      Medical expenses;

13

g.    Loss of her Marriage;

h.    Interference with her other family relationships;

i.    And was eventually subjected to a constructive discharge.

### Count I

**Demand for Relief for Sexual Harassment and Sex Discrimination**
**In Violation of 42 U.S.C. § 1983**
**Against Defendant Leo Pulido**

64.    Plaintiff restates and realleges paragraphs 1 through 63 as paragraph 64 of this Count I.

65.    By virtue of the foregoing, Defendant Pulido, acting under color of state law has violated Plaintiff's right to equal protection of the law as guaranteed her by the Fourteenth Amendment to the Constitution of the United States, thereby violating 42 U.S.C. § 1983.

66.    As a result of this violation, Plaintiff has suffered severe emotional distress, humiliation, degradation, physical symptoms resulting therefrom, deterioration of her health, depression, medical expenses, destruction of her marriage, interference with her family relationships, and loss of income.

67.    In light of the persistent nature of Defendant Pulido's conduct in the face of rejections and complaints by Plaintiff, Defendant Pulido's actions were wanton and malicious warranting the imposition of punitive damages.

WHEREFORE, Plaintiff, Johanna Santiago, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Pulido for compensatory damages in an amount to be determined at trial, for punitive damages in an amount to be determined at trial, and for such other and further relief this Court deems just and equitable.

14

**Count II**

**Demand for Relief for Retaliation
In Violation of 42 U.S.C. § 2000e *et. seq.*
(Title VII of the Civil Rights Act of 1964, as Amended)
Against Defendant Chicago Park District**

68. Plaintiff restates and realleges paragraphs 1 through 63 as paragraph 68 of this Count II.

69. During all times relevant hereto, Defendants Pulido, Flores, and Dowling were employees or agents of Defendant Park District.

70. During all times relevant hereto, Defendants Pulido and Flores were in positions superior to Plaintiff within the hierarchical structure of Defendant Park District.

71. On information and belief, those actions taken by Defendants Pulido, Flores, and Dowling on behalf of Defendant Park District after Plaintiff began complaining to superiors and filed her first charge of discrimination with the EEOC were taken in retaliation for Plaintiff having so complained and for having filed her charge of discrimination.

72. By virtue of the foregoing, Defendant Park District is in violation of 42 U.S.C. § 2000e (§ 704(a) of the Civil Rights Act of 1964, as amended).

73. As a result of this violation, Plaintiff has suffered severe emotional distress, humiliation, degradation, physical symptoms resulting therefrom, deterioration of her health, medical expenses, interference with her family relationships, loss of income and a constructive discharge.

WHEREFORE, Plaintiff, Johanna Santiago, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Park District for compensatory damages in an amount to be determined at trial, and for such other and further relief this Court deems just and

equitable.

## Count III

### Demand for Relief for
### Reckless and/or Intentional Infliction of Emotional Distress
### Against Defendant Nancy Flores

74.     Plaintiff restates and realleges paragraphs 1 through 63 as paragraph 74 of this Count

III.

75.     By virtue of the foregoing, Defendant Flores' conduct was extreme and outrageous.

76.     As a result of this violation, Plaintiff has suffered severe emotional distress,

humiliation, degradation, physical symptoms resulting therefrom, deterioration of her health, medical

expenses, interference with her family relationships, loss of income, and a constructive discharge.

77.     In light of the retaliatory nature of Defendant Flores' conduct that conduct was

wanton and malicious warranting the imposition of punitive damages.

WHEREFORE, Plaintiff, Johanna Santiago, respectfully requests that this Honorable Court

enter judgment in her favor and against Defendant Flores for compensatory damages in an amount

to be determined at trial, for punitive damages in an amount to be determined at trial, and for such

other and further relief this Court deems just and equitable.

## Count IV

### Demand for Relief for Assault
### Against Defendant Nancy Flores

78.     Plaintiff restates and realleges paragraphs 1 through 63 as paragraph 78 of this Count

IV.

16

79.     On information and belief, Defendant Flores' actions described in the foregoing were intended to place Plaintiff in fear of harmful physical contact.

80.     As a result of the foregoing, Plaintiff was reasonably feared unwanted harmful, physical contact from Defendant Flores.

81.     As a result of this violation, Plaintiff has suffered severe emotional distress, humiliation, degradation, physical symptoms resulting therefrom, deterioration of her health, medical expenses, interference with her family relationships, loss of income, and a constructive discharge.

82.     In light of the retaliatory nature of Defendant Flores' conduct, Defendant Flores' actions were wanton and malicious warranting the imposition of punitive damages.

WHEREFORE, Plaintiff, Johanna Santiago, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Flores for compensatory damages in an amount to be determined at trial, for punitive damages in an amount to be determined at trial, and for such other and further relief this Court deems just and equitable.

## Count V

### Demand for Relief for Assault
### Against Defendant Richard Dowling

83.     Plaintiff restates and realleges paragraphs 1 through 63 as paragraph 83 of this Count V.

84.     On information and belief, Defendant Dowling's actions described in the foregoing were intended to place Plaintiff in fear of harmful physical contact.

85.     As a result of the foregoing, Plaintiff was reasonably feared unwanted harmful, physical contact from Defendant Dowling.

17

86.     As a result of this violation, Plaintiff has suffered severe emotional distress, humiliation, degradation, physical symptoms resulting therefrom, deterioration of her health, medical expenses, interference with her family relationships, loss of income, and a constructive discharge.

87.     In light of the retaliatory nature of Defendant Dowling's conduct, Defendant Dowling's actions were wanton and malicious warranting the imposition of punitive damages.

WHEREFORE, Plaintiff, Johanna Santiago, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Dowling for compensatory damages in an amount to be determined at trial, for punitive damages in an amount to be determined at trial, and for such other and further relief this Court deems just and equitable.

## Count VI

### Demand for Relief for
### Reckless and/or Intentional Infliction of Emotional Distress
### Against Defendant Richard Dowling

88.     Plaintiff restates and realleges paragraphs 1 through 63 as paragraph 88 of this Count VI.

89.     By virtue of the foregoing, Defendant Dowling's conduct was extreme and outrageous.

90.     As a result of this violation, Plaintiff has suffered severe emotional distress, humiliation, degradation, physical symptoms resulting therefrom, deterioration of her health, medical expenses, interference with her family relationships, loss of income, and a constructive discharge.

91.     In light of the retaliatory nature of Defendant Dowling's conduct that conduct was wanton and malicious warranting the imposition of punitive damages.

18

WHEREFORE, Plaintiff, Johanna Santiago, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Dowling  for compensatory damages in an amount to be determined at trial, for punitive damages in an amount to be determined at trial, and for such other and further relief this Court deems just and equitable.

## Count VII

### Demand for Relief for
### Reckless and/or Intentional Infliction of Emotional Distress
### Against Defendant Chicago Park District
### Pursuant to the Doctrine of *Respondent Superior*

92.    Plaintiff restates and realleges paragraphs 1 through 63 as paragraph 92 of this Count VII.

93.    By virtue of the foregoing, Defendant Flores' and Defendant Dowling's conduct was extreme and outrageous.

94.    As a result of this violation, Plaintiff has suffered severe emotional distress, humiliation, degradation, physical symptoms resulting therefrom, deterioration of her health, medical expenses, interference with her family relationships, loss of income, and a constructive discharge.

95.    Defendant Flores' and Dowling's actions as previously described were taken while they were in the employ of or were otherwise acting as agents of Defendant Park District and using the authority granted to them by Defendant Park District, thereby subjecting Defendant Park District to liability under the doctrine of *Respondent Superior*.

WHEREFORE, Plaintiff, Johanna Santiago, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Park District for compensatory damages in an

amount to be determined at trial, and for such other and further relief this Court deems just and equitable.

## Count VIII

### Demand for Relief for Assault
### Against Defendant Chicago Park District
### Pursuant to the Doctrine of *Respondent Superior*

96.     Plaintiff restates and realleges paragraphs 1 through 63 as paragraph 96 of this Count VIII.

97.     On information and belief, Defendant Flores' and Dowling's actions described in the foregoing were intended to place Plaintiff in fear of harmful physical contact

98.     In fact, Defendant Flores' and Dowling's acts heretofore described placed Plaintiff in imminent fear of harmful physical contact on numerous occasions.

99.     As a result of this violation, Plaintiff has suffered severe emotional distress, humiliation, degradation, physical symptoms resulting therefrom, deterioration of her health, medical expenses, interference with her family relationships, loss of income, and a constructive discharge.

100.    Defendant Flores' and Dowling's actions as previously described were taken while they were in the employ of or were otherwise acting as agents of Defendant Park District and using the authority granted to them by Defendant Park District, thereby subjecting Defendant Park District to liability under the doctrine of *Respondent Superior*.

101.    As a result of Defendant Flores' and Dowling's conduct Plaintiff suffered severe emotional distress, humiliation, degradation, medical costs, and loss of income.

WHEREFORE, Plaintiff, Johanna Santiago, respectfully requests that this Honorable Court

enter judgment in her favor and against Defendant Park District for compensatory damages in an

amount to be determined at trial, and for such other and further relief this Court deems just and

equitable.

Respectfully submitted,

Johanna Santiago

By: _____
One of her attorneys

Aaron B. Maduff
Atty. No. 06226932
Maduff & Maduff
36 S. Wabash St.
Suite 1415
Chicago, Illinois 60603
312/236-8877

*Cat #2*

DOCKETED
FEB 2 0 2002

FILED·E04
02 FEB 19 PM 1:30
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

### Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

| Plaintiff(s): Johanna Santiago | | Defendant(s):Lee Pulido, et al | |
|---|---|---|---|
| County of Residence: Cook | | County of Residence: | JUDGE SHADUR |
| Plaintiff's Atty: | Aaron B. Maduff<br>Maduff & Maduff<br>36 S. Wabash,<br>Suite 1415<br>(312)236-8877 | Defendant's Atty: | 02C 1160<br>MAGISTRATE JUDGE NOLAN |

| II. Basis of Jurisdiction: | 3. Federal Question (U.S. not a party) |
|---|---|
| III. Citizenship of Principle Parties(Diversity Cases Only) | |
| Plaintiff:- | N/A |
| Defendant:- | N/A |
| IV. Origin : | 1. Original Proceeding |
| V. Nature of Suit: | 42 U.S.C § 1983, Title VII of the Civil Rights Act of 1964 |
| VI.Cause of Action: | Fair Labor Standards Act, 29 U.S.C. Sec. 201 et. seq. and the Illinois Minimum Wage Law 820 ILCS 105/3(d) |
| VII. Requested in Complaint | |
| Class Action: | No |
| Dollar Demand: | To Be Determined |
| Jury Demand: | Yes |

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _[signature]_

Date: _February 19 2002_

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**                    Revised: 06/28/00

**DOCKETED**
FEB 2 0 2002

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

Eastern Division

In the Matter of

Johanna Santiago v. Lee Pulido, et al

FILED-ED4
02 FEB 19 PM 1:30
CLERK
U.S. DISTRICT COURT

Case Number:

02C 1160

**JUDGE SHADUR**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Johanna Santiago

**MAGISTRATE JUDGE NOLAN**

| **(A)** | **(B)** |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME John T Moran Jr. | NAME Aaron B. Maduff |
| FIRM John T Moran & Associates | FIRM MAduff & Maduff |
| STREET ADDRESS 309 W. Washington, Suite 900 | STREET ADDRESS 36 South Wabash, Suite 1415 |
| CITY/STATE/ZIP Chicago, Illinois 60606 | CITY/STATE/ZIP Chicago, Illinois 60603 |
| TELEPHONE NUMBER (312) 630-0200 | TELEPHONE NUMBER (312) 236-8877 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 1954822 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6226932 |
| MEMBER OF TRIAL BAR? YES ✔ NO | MEMBER OF TRIAL BAR? YES ✔ NO |
| TRIAL ATTORNEY? YES ✔ NO | TRIAL ATTORNEY? YES ✔ NO |
| | DESIGNATED AS LOCAL COUNSEL? YES NO |
| **(C)** | **(D)** |
| SIGNATURE Deanne S. Medina | SIGNATURE |
| NAME Deanne S. Medina | NAME |
| FIRM Maduff & Maduff | FIRM |
| STREET ADDRESS 36 South Wabash, Suite 1415 | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, Illinois 60603 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (312) 236-8877 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6273485 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES NO ✔ | MEMBER OF TRIAL BAR? YES NO |
| TRIAL ATTORNEY? YES ✔ NO | TRIAL ATTORNEY? YES NO |
| DESIGNATED AS LOCAL COUNSEL? YES NO | DESIGNATED AS LOCAL COUNSEL? YES NO |

1-3